UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION,

CAROL MARIE RUCKER

    *Plaintiff*,

v.                                CASE NO. 13-cv-13908

COMMISSIONER OF          DISTRICT JUDGE NANCY G. EDMUNDS
SOCIAL SECURITY,            MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 1)[2] be **DENIED**, that Defendant's Motion for Summary Judgment (Doc. 17) be **GRANTED**, and the decision of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1] The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

[2] Plaintiff did not file a motion for summary judgment. For the reasons set forth below, the Causes of Action that Plaintiff identified in her Complaint will be treated as her Motion for Summary Judgment. (Doc. 1 at 10.) Defendant's Motion for Summary Judgment and Plaintiff's causes of action will be addressed on the merits.

insurance benefits (DIB), and supplemental security income benefits (SSI). The matter is currently before this Court on cross-motions for summary judgment.[3] (Docs. 1, 17.)

Plaintiff filed applications for a period of disability and DIB and SSI with a protective filing date of January 18, 2011, alleging that she became disabled on November 4, 2010. (Transcript, Doc. 14, 133-39, 140-45.) The claims were denied at the initial administrative stages. (Tr. 104-07, 108-11.)

On December 28, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Gerald A. Freedman, who considered the application for benefits *de novo*. (Tr. 27.) In a decision dated March 9, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from November 4, 2010, through the date of the ALJ's decision. (Tr. 20-21.) Plaintiff requested Appeals Council review of this decision. (Tr. 6-7.)

The ALJ's decision became the final decision of the Commissioner on July 18, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5); *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). On September 12, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

B.     **Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence

---

[3]The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by

a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### C. Governing Law

Disability for purposes of DIB and SSI is defined as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) (DIB), 416.905(a) (SSI).

Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), (g).

**D.      ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements through December 31, 2013, and had not engaged in substantial gainful activity since November 4, 2010. (Tr. 13.) At step two, the ALJ found that Plaintiff's coronary artery disease (ischemic heart), lower back pain, right rotator cuff tear, depression and anxiety were "severe" within the meaning of the second sequential step. (Tr. 13.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 13-15.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in the Regulation except further limited to no lifting more than five pounds with her dominant right hand and no more than ten pounds with the left hand, may perform only simple one to two step jobs and have no contact with the general public. (Tr. 15.) At step four, the ALJ found that

5

Plaintiff could not perform her past relevant work as a pharmacy technician, classified as light in exertion per the Dictionary of Occupational Titles (DOT), and maintenance worker, classified as medium per the DOT. (Tr. 19.) At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy and therefore she was not suffering from a disability under the Social Security Act. (Tr. 20.)

### E. Administrative Record

Plaintiff was 46 years old at the alleged onset date and 47 years old at the time of the ALJ hearing. (Tr. 19, 31.) Plaintiff lives in a condominium with her two school aged daughters. (Tr. 31.) Plaintiff has a GED. (Tr. 31-32.) Plaintiff later received a certificate in word processing and data entry. (Tr. 32.) Plaintiff last worked as a pharmacy technician from 2005 to 2007 and lost her job when that drugstore shut down. (Tr. 32.)

Plaintiff testified that she looked for a job after that, but she had a heart attack in May 2007 and she was too sick and depressed to continue looking. (Tr. 33.) Plaintiff testified that she had a second heart attack in October 2010 after which she had a stent placement. (Tr. 33, 36.) Plaintiff testified that she uses a TENS unit for back pain that started one to two years prior to the hearing. (Tr. 38.) She described leg weakness from her back condition, testified that her back pain has worsened since the prior ALJ hearing and testified that her neck pain has not changed since the prior hearing. (Tr. 38, 40, 41.) She also testified that she has three tears in her right rotator cuff. (Tr. 39-40.) Plaintiff explained that she has been advised that to have a surgical repair of the shoulder, she would have to stop taking Plavix, which her cardiologist did not recommend at that time. (Tr. 39-40.)

Plaintiff testified that she did not have any side effects from her medication, other than being allergic to sulfa. (Tr. 41.) When the ALJ questioned her about specific side effects she

agreed that her medications make her drowsy, they affect her stomach, they cause diarrhea, constipation and abdominal pain and they cause her to doze off. (Tr. 41-42.)

Plaintiff described her days as being spent on the sofa, propped up with pillows. (Tr. 43-44.) She gets up to use the bathroom, get something to drink and stretch out. (Tr. 43-44.) She testified that she is taking a water pill so she gets up to use the bathroom every 10 or 15 minutes. (Tr. 45.) Plaintiff testified that the heaviest weight she can lift with the right hand is five pounds and with the left hand she has no problems and can lift a gallon of milk. (Tr. 45-46.) Plaintiff testified that her daughters help with household chores, but she is able to fix a sandwich and reheat food in the microwave. (Tr. 46-47.)

The ALJ gave Plaintiff's counsel additional time following the hearing in which to submit recent medical records and suggested obtaining medical source statements from Plaintiff's treating doctors, including the psychiatrist and cardiologist. (Tr. 29, 48-49.)

The record shows Plaintiff has reported mental health problems since 2007, after witnessing a violent event within her family. (Tr. 341.) Mental health treatment records from 2010 show that Plaintiff reported that prior to this episode she was "high functioning," worked full time, and had a house and a car. (*Id.*) She reported that following this event she was no longer able to work due to anxiety and other health problems. (*Id.*) The record contains mental health treatment records from Training and Treatment Innovations, Inc., discussed more fully below. (Tr. 243-355.) The records show that Plaintiff reported improvement with the medication Paxil. (Tr. 271, 299.)

Plaintiff has a history of having undergone a cardiac catheterization in 2007 for minor coronary artery disease, and a balloon cutting procedure with placement of a drug-eluting stent into the proximal left anterior descending coronary artery in 2010. (Tr. 230, 505.) The transcript

7

contains the follow-up records for the 2010 stent placement and these records also reference the 2007 procedure. (Tr. 230-33.)

As of March 22, 2011, Plaintiff's reported medications included Flexeril, Naproxen, Lovastatin, Paxil, aspirin, Norco, Flonase, Ovair (sic), Plavix, Benadryl, Toprol and Diazepam. (Tr. 457.) In September 2011, Plaintiff reported to the emergency room with complaints of shortness of breath and edema. (Tr. 499.) Plaintiff's diagnoses on discharge were chest and shoulder pain. (Tr. 499, 532-34.) Plaintiff underwent cardiology consultations 2011 and 2012 with Andrew Borin, D.O. (Tr. 494-96, 486-90.) In September 2011, it was noted that Plaintiff reported that she had not utilized nitroglycerin in approximately eight months. (Tr. 573.) In October 2011, Dr. Borin reported that Plaintiff had a normal stress Pereantine study, which suggested that she had "no significant underlying coronary vascular disease." (Tr. 568.)

A May 2010 x-ray of the cervical spine revealed only minimal degenerative changes at C5-6. (Tr. 423.) A June 2010 upper extremity electromyography study was normal. (Tr. 444.) A June 2010 MRI of the cervical spine revealed a "very minimal bulging disc at C4-5" and was otherwise normal. (Tr. 445.) A January 2011 electrodiagnostic study of the lumbar region and lower limbs revealed right peroneal motor axonal neuropathy and no electrodiagnostic evidence of lumbar radiculopathy. (Tr. 428, 437-39.) A February 2011 orthopaedic consultation report referenced an MRI that showed a full thickness tear of the supraspinatus. (Tr. 518-19.) The assessment was cervical radiculopathy and full thickness supraspinatus tear. (Tr. 519.) In April, May and June 2011 Plaintiff treated at Rehabilitation Associates, P.C., for low back pain and bilateral lower extremity pain and tingling. (Tr. 509.) In June Plaintiff reported discontinuing Valium and Norco because they did not help her pain and made her groggy. (*Id.*) It was recommended that she try a

TENS unit for pain over the following days. (Tr. 510.) The doctor noted that arterial vascular studies of the lower extremities were normal. (Tr. 509, 527.)

On February 9, 2012, following the hearing yet prior to the ALJ's decision, Plaintiff followed up at Rehabilitation Associates, P.C., with complaints of back pain, left hip pain and throbbing. (Tr. 482.) The doctor's impression was chronic low back pain with osteoarthritis and "primarily what appears to be facet dysfunction as well as concomitant left trochanteric bursitis. (Tr. 483.) Plaintiff was unable to receive injections at that time due to her cardiac history and she was advised to continue with a home stretching program. (Tr. 483.) She was given a trial of Lidoderm patches and advised to continue on Lyrica. (*Id.*)

At the hearing, the vocational expert ("VE") testified that Plaintiff's work as a pharmacy technician was semi-skilled and light in exertion and her maintenance job was unskilled and medium in exertion. (Tr. 49, 52.) The ALJ asked the VE to assume Plaintiff is capable of performing sedentary work further limited to:

> [L]ifting no more than five pounds with her dominant right hand, ten pounds with her non-dominant left. . . . [C]ombined would be ten as well. And be limited to essentially simple type of jobs, simple one-, two-step types of jobs because of problems with memory loss that's what she's testified to; depression, anxiety she's under treatment. . . . (Tr. 52-53.)

The VE testified that there are sedentary jobs which such an individual could perform. (Tr. 53.) Jobs within the region defined as Southeast Michigan include: Addressing clerk (1,100 jobs, 2,300 statewide); and appointment clerk. (Tr. at 53-54.) The ALJ then asked the VE to eliminate any jobs that require dealing with the public and again reiterated the need for simple one to two step types of jobs. (Tr. 54.) The VE testified that there were jobs available as a sorter with 3,200 in the region and 19,000 in Michigan and testified that the addressing clerk job would also remain available, with 1,100 jobs in the region and 2,300 jobs in Michigan. (Tr. 54.)

9

The ALJ then asked the VE:

[B]ased upon the testimony of Ms. Rucker, and assuming that there is objective medical evidence in the file, or medical evidence that will be submitted, as well as opinion evidence by a primary care physician or specialist; based upon her testimony, would she be able to engage in her past relevant work? (Tr. 55.)

The VE testified that he did not believe so, based on Plaintiff's "subjective complaints of her back pain and how she dozes off and weakness." (Tr. 55.) He further testified that she would not be able to engage in the jobs indicated in response to the first hypothetical question. (Tr. 55.)

**F.    Analysis**

Plaintiff did not file a motion for summary judgment or a supporting brief. Although Plaintiff is *pro se* she has failed to make the most basic of assertions as to why she seeks appeal of the ALJ's decision and she raised no specific issues before this Court. The Court looks to Plaintiff's Complaint to discern her arguments. (Doc. 1.) Plaintiff's Complaint is a form to which she has attached the Notice of Appeals Council Action, a proof of incarceration dated September 12, 2013, and showing that Plaintiff was incarcerated from October 29, 2012 to August 29, 2013, and a Civil Cover Sheet on which Plaintiff describes her cause of action as "mental & heart disease, high BP, short term memory lost (sic), mentally ill." (*Id.*)

Defendant argues that Plaintiff has failed to make any cognizable claim to challenge the ALJ's decision.[4] (Doc. 17.) Defendant argues that despite the Court's "strong preference that claims be adjudicated on their merits, and the liberal construction the court accords briefs of pro se litigants, pro se parties must still brief the issues advanced 'with some effort at developed argumentation.'" *Fulakis v. Columbus Pub. Sch.*, 53 F. App'x 340, 341(quoting *United States v.*

---

[4]Defendant in the alternative argues that there are no exceptional circumstances that would justify overturing the ALJ's decision despite Plaintiff's lack of developed argument. (Doc. 17.)

*Reed*, 167 F.3d 984, 993 (6th Cir. 1999)). Plaintiff's failure to provide even a vague challenge to the ALJ's decision does not require the court to formulate arguments on her behalf or "to undertake an open-ended review of the entirety of the administrative record to determine (I) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491(6th Cir. 2006)("In the absence of any such focused challenge, we decline to broadly scrutinize any and all treating physician opinions in the record to ensure that they are properly accounted for in the ALJ's decision.")

Where Plaintiff does not provide argument in support of conclusory claims, the court may deem them waived. *Kruse v. Comm'r of Soc. Sec.*, 2009 WL 902440 at *5 (W.D.Mich. April 2, 2009) (*Pro se* plaintiff filed "a rambling 19-page brief which is, at times, unintelligible." The district court addressed seven errors referenced in the brief, yet deemed the additional undeveloped arguments waived.)(citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).

Even though Defendant may be correct, I have reviewed and considered the record, the pleadings and the ALJ's decision, as I am required to, and I agree with the Commissioner that the ALJ's decision is supported by substantial evidence and that the ALJ properly explained his findings. As mentioned earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports a different conclusion. *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006); *Mullen,* 800 F.2d at 545. Reading *pro se* Plaintiff's Complaint broadly, I will consider those impairments she listed on the Civil Cover Sheet and identified as her "cause of action" as her arguments for summary judgement.

11

The ALJ correctly pointed out that there is a prior ALJ decision dated November 3, 2010. (Tr. 57-73.) Plaintiff did not raise this issue, however, it is worth noting that the ALJ properly noted the prior decision and findings pursuant to Acquiescence Ruling (AR) 98-4(6)[5] and the record shows some new impairments. Both the current ALJ and the prior ALJ found that Plaintiff has the ability to perform a limited range of sedentary work.

The prior ALJ found that Plaintiff had not been under a disability at anytime from November 30, 2007, thought the November 3, 2010 decision. (Tr. 70.) The prior ALJ found that Plaintiff had the following severe impairments: depression, anxiety and ischemic heart disease. (Tr. 62.) Her impairments did not meet or medically equal a listed impairment and he concluded that she retained the ability to perform sedentary work further limited to lifting no more than five pounds and walking no more than fifty feet, Plaintiff could not focus on light for more than thirty minutes at a time, can have only occasional interaction with coworkers and the public and was limited to simple, repetitive tasks. (Tr. 65.) The ALJ determined that Plaintiff was unable to perform her past relevant work, yet was able to perform jobs that exist in significant numbers in the economy, for example a limited range of sedentary jobs including that of visual inspector, sorter, and final assembler, with 2,200 positions in Detroit and 4,400 positions in Michigan. (Tr. 69.)

The current ALJ points out that the Plaintiff's alleged onset date does not correspond to a particular medical event, but is the day after the prior ALJ's decision. (Tr. 16.) The ALJ concluded

---

[5]AR 98-4(6) provides that
> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulation or rulings affecting the finding or the method for arriving at the finding. AR 98-4(6)

12

that the evidence for the current relevant period fails to show a worsening of condition that would merit a departure from the prior limitation to a limited range of sedentary work. (Tr. 17.) The ALJ properly explained his findings and his decision is supported by substantial evidence.

    **1.**    **Mental Impairments and Resulting Limitations**

Plaintiff in her Complaint alleges mental impairments as follows: "[M]ental," "short term memory lost (sic)" and "mentally ill." (Doc. 1 at 10.) With respect to Plaintiff's mental impairments, the ALJ identified anxiety and depression as severe impairments. Both anxiety and depression were identified as severe impairments in the prior ALJ decision and are supported by the medical records for the current relevant period of time. The ALJ properly measured the severity of Plaintiff's mental disorder in terms of four functional areas, known as the "B" criteria, by determining the degree of limitation in each area. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ determined that Plaintiff has mild limitations in activities of daily living, moderate limitations in social functioning and in maintaining concentration, persistence or pace and that there have been no episodes of decompensation.(Tr. 14-15.)

In the first three functional areas, the ALJ pointed to specific evidence in the record that supported his decision. For example, in a function report dated February 11, 2011, Plaintiff reported that she cares for her two daughters, making sure they get up and get on the bus, and buying food for them. (Tr. 191.) Plaintiff reported having no problem with her own personal care and needing no reminders or help taking medication. (Tr. 191-92.) She reported going to stores once or twice a month for brief periods and that she is able to pay bills, count change, handle a savings account and use a checkbook and/or money orders. (Tr. 193.)

As the ALJ pointed out, his findings are also supported by the April 18, 2011 opinion of medical consultant Rom Kriauciunas, Ph.D. Based on a review of the record at that time, Dr.

Kriauciunas found that Plaintiff had mild restrictions in activities of daily living and moderate restrictions in maintaining concentration, persistence and pace and maintaining social functioning. (Tr. 14, 80, 94.)

Plaintiff in her complaint lists "memory lost" as a cause of action. Plaintiff testified at the hearing that her memory was bad. (Tr. 51.) The record shows that Plaintiff reported to a mental health treater that she had short-term memory loss as a result of a motor vehicle accident in 2002. (Tr. 279.) This impairment would have been present during the last ALJ decision period and the record shows that Plaintiff worked at least forty hours per week after that time at substantial gainful employment levels since then. (Tr. 181-84, 162-63.) There is no other medical evidence in the record that supports severe claims of memory loss that would preclude work.

On November 8, 2010, Plaintiff underwent a Psychiatric Evaluation with Bhaskar Yerasi, M.D. (Tr. 327- 33). Plaintiff's memory for recent and past events was noted to be "intact." (Tr. 332.) She was diagnosed with post-traumatic stress disorder, anxiety disorder not otherwise specified, major depressive disorder, recurrent, unspecified, and cannabis abuse. (Tr. 332.) In a more recent example, Plaintiff underwent a psychological evaluation on March 22, 2011, with Michael Matouk, M.A., L.L.P. (Tr. 456-60.) Upon examination, Mr. Matouk assessed both Plaintiff's remote memory and recent memory as "good." (Tr. 458.) Mr. Matouk diagnosed Depressive Disorder, Anxiety Disorder NOS, and noted to rule out posttraumatic stress disorder. (Tr. 460.) He assigned a GAF of 50 and concluded that Plaintiff "would probably perform effectively in a vocational environment which is low in stress, with accommodation of any physical and medical limitations she may have." (Tr. 460.) He found that her "concentration level is fair, while she appears competent to actively develop interpersonal relationships." (Tr. 460.) The

14

ALJ considered Mr. Matouk's report from the consultative examination and relied on it in making his findings. (Tr. 17.)

With respect to Plaintiff's mental impairments, the ALJ included in his RFC non-exertional limitations to "only simple, one-two step jobs; and no contact with the general public." (Tr. 15.) The prior ALJ included mental limitations to "only occasional interaction with coworkers and the public" and "limited to simple, repetitive tasks". (Tr. 65.) The ALJ's limitation with respect to the public is more restrictive than the prior ALJ's RFC and the limitations with respect to coworkers are less restrictive. The ALJ's finding is supported by the opinion of consultative examiner Dr. Kriaciunas and Mr. Matouk.

Dr. Kriauciunas opined that Plaintiff was moderately limited in the ability to relate to the public but not significantly limited in any of the listed social interactions that involved peers, coworkers, or supervisors. (Tr. 85, 99.) With respect to understanding and memory, and sustained concentration and persistence, Dr. Kriauciunas found Plaintiff was moderately limited in the ability to concentrate and complete complex assignments and the ability to comprehend and recall complex directions. (Tr. 84-85, 98-99.) He concluded that she "is capable to do simple, low-stress, unskilled work on a sustained basis." (Tr. 85, 99.) His opinion shows that Plaintiff's social limitations increase when relating to the public. This is not inconsistent with Mr. Matouk who opined that Plaintiff "appears competent to actively develop interpersonal relationships." (Tr. 460.) Dr. Kriauciunas's opinion shows that her limitations in concentrating on and completing assignments, as well as comprehending and recalling directions are present with complex directions and assignments, and these limitations are accounted for by the ALJ's limitation to simple, one to two step jobs. (Tr. 15, 17.) The ALJ also pointed out that Plaintiff's mental conditions had not worsened since the prior ALJ decision, which similarly limited Plaintiff to

15

simple tasks. (Tr. 17.) The ALJ explained his findings regarding Plaintiff's mental impairments and his findings and the mental limitations in the RFC are supported by substantial evidence in the record.

**2. Physical Impairments and Resulting Limitations**

In her Complaint, Plaintiff identified "causes of action" as heart disease and high blood pressure, in addition to the above-mentioned mental impairment allegations. Plaintiff did not challenge the ALJ's findings with respect to lower back pain and the right rotator cuff tear, therefore the discussion herein will focus on the heart and blood pressure related challenges. The ALJ found that Plaintiff has severe physical impairments of coronary artery disease (ischemic heart), lower back pain, and right rotator cuff tear.

Plaintiff did not identify high blood pressure on her application as one of the physical conditions that limit her ability to work. (Tr. 172.) The record does not support high blood pressure as a severe impairment, and even if it did, there is no evidence that there are resultant limitations related to hypertension or high blood pressure that are not already accounted for by Plaintiff's severe impairment of coronary artery disease. Plaintiff underwent a physical consultative examination on March 21, 2011, with Lalitha Koneru, internal medicine. (Tr. 447-54.) Dr. Koneru reported diagnoses of coronary artery disease, stable, right rotator cuff injury, degenerative joint disease of the cervical and lumbar spines and noted to rule out COPD, due to Plaintiff's use of inhalers. (Tr. 449.) The doctor opined that Plaintiff "does have limitations with lifting and carrying with her right upper extremity of weights great than 20 to 30 pounds," "may have limitations with walking and climbing steps secondary to her COPD," "does have limitation with reaching above head," and "may have limitations with pushing and pulling." (Tr. 449.) The doctor did not note a diagnosis of high blood pressure.

Treatment notes from Paul W. Haduck, D.O., and Mathew F. Kulick, D.O., at Opdyke Diagnostic Center from May 19, 2010 to February 2012 do not note problems with blood pressure nor is high blood pressure identified as an impairment elsewhere in the records from the relevant period. Plaintiff's blood pressure readings during this time were generally within a normal range. The ALJ properly accounted for Plaintiff's mental and physical impairments at steps two and three of the analysis and his findings are supported by substantial evidence.

Finally, Plaintiff lists "heart disease" as a cause of action. The ALJ found that Plaintiff's coronary artery disease was severe at step two of the analysis. (Tr. 13.) At step three, the ALJ properly considered the Listings and analyzed Plaintiff's condition pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1, 4.04 Listing 4.04, Ischemic Heart Disease, giving specific reasons why Plaintiff did not meet the Listing. (Tr. 14.) The ALJ went on to the remaining steps in the analysis and made findings based on the evidence regarding how Plaintiff's coronary artery disease and other impairments affect her ability to work.

The physical exertional and non-exertional limitations set forth in the ALJ's RFC, including the limitation to sedentary work and lifting no more than five pounds with the dominant right hand and ten pounds with the left, are supported by substantial evidence. Dr. Borin, completed a Physical Residual Functional Capacity Questionnaire dated February 21, 2012. (Tr. 555-59.) He reported Plaintiff's diagnoses as "stable angina [status post] stent LAD, carotid." (Tr. 555.) Like consultative examiner Dr. Koneru, he made no mention of high blood pressure as a diagnosis. Dr. Borin reported Plaintiff's prognosis as "excellent" and her symptoms as right shoulder limitation and "fatigue dyspnea on exertion." (*Id.*) He noted no side effects with his medications. (*Id.*) He opined that she would constantly experience pain or other symptoms "severe enough to interfere with attention and concentration needed to perform even simple work tasks", yet he also noted that

she could tolerate low stress jobs. (Tr. 556.) He opined that she could walk 1 city block without pain or rest, she could sit for more than two hours at a time, she could stand ten minutes at one time, she could sit at least 5 hours[6] and stand and/or walk about 2 hours in an eight-hour workday, she would not need to shift position at will or take unscheduled breaks or elevate her legs. (Tr. 556-57.) She could lift and carry less than 10 pounds frequently, 10 pounds occasionally, and 20 pounds "rarely." (Tr. 557.)  She could not twist, stoop, crouch, squat or climb ladders. She may frequently climb stairs. (Tr. 557.) He opined that Plaintiff's impairments were not likely to produce good days and bad days, yet he opined that she would likely be absent more than four days per month as a result of impairments or treatment. (Tr. 558.)

It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference.  Under 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  However, dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

While the majority of Dr. Borin's opinions are completely consistent with and, in some instances, less restrictive than the ALJ's RFC, the ALJ properly explained those areas where he gave Dr. Borin's opinion less weight. (Tr. 18.) Specifically, the ALJ gave little weight to Dr. Borin's opinion that Plaintiff would miss 4 days of work per month due to impairments or

---

[6] The ALJ noted that this was "5" hours on the form, however, it looks like a numeral "6" in comparison to other sixes on the form. In either event, "at least 5 hours" or "at least 6 hours" is not inconsistent with a total of an 8-hour day in combined walking, standing and sitting. (Tr. 18.)

18

treatment. (Tr. 558.) The ALJ points out that the doctor, on the same page, had indicated that Plaintiff's impairments were not likely to produce "good days" and "bad days." He also points out that nowhere else in Dr. Borin's opinion does the doctor identify impairments or other reasons for such absenteeism. (Tr. 18.) The ALJ also explained that Dr. Borin's limitation to "never" performing the postural activities such as twisting, stooping or crouching and no reaching with the right arm, were inconsistent with other records. (Tr. 18, 558.) For example, upon physical examination, Dr. Koneru reported that Plaintiff was "able to squat and bend to full distance and recover" and had only a "slight" decrease in right upper extremity motor strength. (Tr. 18, 449.) The ALJ explained the weight he gave to Dr. Borin's opinion, explaining both where it was internally inconsistent and where it was inconsistent with other evidence of record.

The physical limitations are supported by other substantial evidence of record. The ALJ pointed out that Dr. Koneru's opinion supports his findings that Plaintiff's can perform a limited range of sedentary work. (Tr. 18.) The lifting restrictions, although they vary slightly from the prior ALJ, are supported by Plaintiff's own testimony regarding her right and left arms and her ability to lift more weight with the left upper extremity.

The ALJ's RFC is supported by substantial evidence in the record. In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ properly relied on the VE's testimony in response to the hypothetical question to find that Plaintiff can perform a significant number of jobs in the economy. The ALJ's finding at step five is supported by substantial evidence in the record.

**G.   Conclusion**

The ALJ's decision to deny benefits was within the range of discretion allowed by law, it is supported by substantial evidence and there is simply insufficient evidence to find otherwise. Defendant's Motion for Summary Judgment (Doc. 17) should be granted, that of Plaintiff (Doc. 1) denied and the decision of the Commissioner affirmed.

**III.   REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837 (*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ Charles E. Binder
                                                CHARLES E. BINDER
Dated: August 6, 2014                        United States Magistrate Judge